# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**  609-858-9360
**United States Bankruptcy Judge**  609-989-2259 Fax

June 17, 2020

Edward Hanratty, Esq.
80 Court Street
Freehold, NJ 07728
*Attorney for Alexander Moss, Plaintiff*

Michael G. Celli, Jr., Esq.
382 Morris Avenue
Long Branch, NJ 07740
*Attorney for Township of Neptune, Defendant*

    **Re:** **In re Alexander Moss**
       **Case No.: 12-38448**
       **Adv. Pro. No.: 19-2191**

Counsel:

  This matter comes before the Court on a motion (ECF No. 23) filed by Alexander Moss (the "Plaintiff") in the above-captioned adversary proceeding, seeking summary judgment in his favor as to the count in the complaint asserting a violation of the discharge order and requesting the Court enter an order assessing liability against defendant, the Township of Neptune ("Defendant"). Defendant responded by opposing the entirety of Plaintiff's motion and filing a cross motion (ECF No. 28) seeking summary judgment and dismissing the entirety of the adversary proceeding complaint, with prejudice.

  The Court has reviewed all the submissions and has considered the arguments made during the hearing on June 2, 2020. For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED as to liability. Defendant's cross motion for summary judgment is

DENIED. This Court shall schedule an evidentiary hearing to determine appropriate damages in favor of the Plaintiff.

I.    **Background**

Plaintiff filed a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code on December 4, 2012 (No. 12-38448). Neptune Township Municipal Court was listed as an unsecured nonpriority creditor on the petition and continued to receive notice of the then-pending bankruptcy matter. Plaintiff's former attorney filed a motion to rescind a driver's license suspension order entered by the Neptune Township Municipal Court for non-payment of pre-petition fines. In response to the motion, on February 27, 2013, this Court entered a self-executing order, voiding the prior license suspension order. Order Voiding Driver's License Suspension Order . . . by Neptune Township, ECF No. 18, Case No. 12-38448. On November 29, 2016, Plaintiff received his chapter 13 discharge. The next day, Plaintiff's former counsel sent a letter to Defendant notifying it of Plaintiff's discharge and supplied a copy of the discharge order. Former counsel even went as far to educate Defendant as to a 1992 Memorandum to Municipal Court Judges from the New Jersey Administrative Office of Courts concerning a directive stating that courts must cease enforcement of pre-petition fines and suspensions in respect of any chapter 13 discharge. However, on February 7, 2017, former counsel was forced to contact Defendant because its computer system showed that Plaintiff still owed fines or penalties to Neptune Township, despite such fines and penalties being discharged in the chapter 13 case and Defendant having been placed on notice of Plaintiff's discharge.

The initial bankruptcy case was reopened on April 30, 2018, on Plaintiff's motion for violation of the automatic stay. A second order was entered on June 14, 2018, specifying that, "Neptune Twp Municipal Court is hereby in violation of the automatic stay and shall immediately

2

Case 19-02191-MBK    Doc 36    Filed 06/17/20    Entered 06/17/20 12:28:06    Desc Main
Document    Page 3 of 15

take the necessary efforts to correct their records . . . and be prohibited from sending any collection letters to the debtor threatening the suspension of debtor's driving privileges and registration of debtor's vehicle." *Order Granting Motion for Violation of Automatic Stay Against Neptune Township* 3, ECF No. 46, Case No. 12-38448.[1]

In addition to the above case history, Plaintiff provided several recent notices from Defendant for this Court to review. On December 13, 2019 and December 27, 2019, Defendant issued notices alerting Plaintiff that he was in arrears on payments for violating N.J. STAT. ANN. § 39:3-4 (2013) for driving after his license was suspended or revoked, and that if he did not cure such arrears by early January, a warrant would be issued for his arrest and his driving privileges and vehicle registration would be suspended. These notices followed earlier notices, dated, October 3, 2019 and November 4, 2019, in which Plaintiff was advised that his hearing for violating N.J. STAT. ANN. § 39:3-4, which the offense occurred on April 2, 1992, was being rescheduled. Indeed, On June 19, 2019, Plaintiff had received another scheduling notice pertaining to the April 2, 1992 violation, as well as a second violation that had occurred on June 24, 2001 related to N.J. STAT. ANN. § 39:4-97.2.

This Adversary Proceeding was filed on October 21, 2019, seeking damages for "a violation of the bankruptcy code's discharge provisions, in that the debtor obtained a discharge of the relevant debt, and the creditor continues to act in a manner inconsistent with the debtor's rights under the code." *Plaintiff's Complaint* 2, ECF No. 1. On January 3, 2020, Plaintiff's current counsel sent a letter to Defendant concerning an outstanding arrest warrant and Plaintiff's lost wages, mental and emotional harm, and additional attorney fees, court costs and lost time from work due to Defendant's conduct. Defendant filed a cross motion opposing the entirety of

---

[1] As the motion for violation of the automatic stay was unopposed by Neptune Township, the Court entered movant's proposed order, notwithstanding that the Movant should have sought relief for violation of the discharge injunction.

3

Plaintiff's motion and seeking summary judgment to ultimately dismiss this adversary proceeding with prejudice ("Cross Motion").

Inexplicably, Defendant questions whether Plaintiff's motor vehicle fines were discharged in Plaintiff's chapter 13 bankruptcy.[2] "The only issue (STILL yet to be properly and adequately determined) is whether all of the outstanding fines and costs at issue were subject to discharge, and if so, whether they were actually discharged by the November 29, 2016 Order of Discharge." *Defendant's Cross Motion* 12, ECF No. 28. Yet, Defendant's suggestion that the fines and penalties are not related to motor vehicle charges is clearly without merit. Plaintiff provided copies of relevant notices from Defendant that specifically reference violations to Title 39, which unequivocally regulates motor vehicles and traffic.[3]

This Court has no reservations in determining that these fines were discharged in the underlying bankruptcy. This Court has taken judicial notice of the docket of the original chapter 13 bankruptcy petition dated December 4, 2012, and confirmed Neptune Township was included as an unsecured nonpriority creditor.[4] Defendant was properly noticed of the petition filing and was subsequently advised of the entry of a discharge. As a result, the only remaining issues before the Court are whether Neptune Township violated the discharge order by continuing to notice

---

[2] "The fact is that there is not adequate information in the record to determine whether the fine at issue were criminal, ordinance, or motor vehicle, and whether they were subject to discharge." *Defendant's Cross Motion,* p. 13, ECF No. 28.

[3] The parties agree that motor vehicle fines are not criminal under New Jersey law. "An offense defined by this code or by any other statute of this State, for which a sentence of imprisonment in excess of 6 months is authorized, constitutes a crime within the meaning of the Constitution of this State." N.J. Stat. Ann. § 2C:1-4 (West).

[4] *Furnari v. Warden, Allenwood Federal Correctional Inst.,* 218 F.3d 250, 255 (3d Cir.2000); *In re Indian Palms Assocs.,* Ltd., 61 F.3d 197, 205 (3d Cir.1995); *See In re Kesler*, No. 12-12716 MBK, 2013 WL 653089, at *6 (Bankr. D.N.J. Feb. 21, 2013) (concluding that judicial notice can be taken of certain facts such as that a document was filed, a position taken, an admission or allegation made "as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority.").

4

Plaintiff for fines that were discharged in 2016, and whether Defendant has any defenses under either Sovereign Immunity or the New Jersey Tort Claims Act.

## II. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 1). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S. Ct. 2548). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

"Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *In re Moran-Hernandez*, 544 B.R. 796, 800 (Bankr. D.N.J. 2016) (quoting *Matsushita,* 475 U.S. at 586, 106 S. Ct. 1348). A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. FED. R. CIV. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"); see also *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 249–250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

### III.    Violation of the Discharge Order

Pursuant to 11 U.S.C. § 524(a)(2), a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). "Debt" is defined in the Bankruptcy Code as "liability on a claim," and the term "claim" is the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11

6

U.S.C. §§ 101(5)(A), 101(12). Section 1328 discusses dischargeability of certain debts in chapter 13 cases. Specifically, the section states, in relevant part:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 503 of this title, **except** any debt—
>
> . . .
>
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);
>
> (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction, of a crime[.]

11 U.S.C. § 1328(a) (emphasis added). While Congress lists several exceptions to dischargeability, it excluded 11 U.S.C. § 523(a)(7), which includes debts for a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7). Municipal court fines fall within the definition of § 523(a)(7), and as such are dischargeable in a chapter 13 bankruptcy case if the case proves successful. 11 U.S.C. § 1328(a)(2). *See In re Osorio*, 522 B.R. 70, 76 (Bankr. D.N.J. 2014). Furthermore, the municipal court fines do not fall within the Code's definition or interpretation of "criminal fines" under 11 U.S.C. § 1328(a)(3), which Congress intended to be construed narrowly in favor of the debtor. *See In re Ryan*, 389 B.R. 710, 719 (B.A.P. 9th Cir. 2008). This interpretation is consistent with New Jersey law that does not find motor vehicle fines to be criminal. *See* N.J. Stat. Ann. § 2C:1-4 (West). This Court does not intend to expand the meaning of § 1328(a)(3) to include motor vehicle fines. Here, the Plaintiff listed his pre-petition municipal court fines in his filed bankruptcy petition and then successfully completed his chapter 13 bankruptcy on November 29, 2016. As the case was successfully completed and all plan payments disbursed, the Municipal Court fines were properly discharged through the chapter 13 plan.

7

On March 23, 1992, Robert Lipscher of the Administrative Office of the Courts for the State of New Jersey advised the Municipal Court judges, directors, and administrators by memorandum, pursuant to Municipal Court Bulletin Letters #11/12-80 and #2-87, that when a municipality is noticed of a debtor's bankruptcy filing, the matter should be referred immediately to the municipal attorney to advise the courts and the municipality that dischargeable debts should not be enforced. Such "monetary obligations should not be enforced by the court. Furthermore, the imposition of **consequent penalties** for non-payment of a monetary sentence, such as **suspension of the defendant-debtor's driving privileges**, should not be ordered by the court." ADMINISTRATIVE OFFICE OF THE COURTS. STATE OF NEW JERSEY, Memorandum on Discharge in Bankruptcy — Chapter 13 (March 23, 1992) (emphasis added). Defendant was noticed of this directive on at least two occasions by Plaintiff's counsel, and still proceeded to collect on a pre-petition debt by issuing notices to Plaintiff and threatening to issue out a warrant for his arrest.

Here, Defendant is in violation of both the Bankruptcy Code's discharge language, as well as the State's memorandum, by attempting to collect pre-petition fines through repeated and continuous noticing of fines and by threatening an arrest warrant, actions which allegedly resulted in lost wages, lost time from work, mental, and emotional harm, as well as additional attorney fees and court costs. "Under our longstanding precedent, States, whether or not they choose to participate in the proceeding, are bound by a bankruptcy court's discharge order no less than other creditors." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 448, 124 S. Ct. 1905, 1911, 158 L. Ed. 2d 764 (2004). Therefore, the question remains as to whether Defendant may be held in contempt for violating the discharge order.[5]

---

[5] While Defendant's opposition and cross motion argue for application of the "judicial immunity" doctrine, the municipal court judge issuing the referenced orders is not a named defendant in this adversary proceeding. The doctrine is inapposite and need not be addressed further.

8

## IV. Contempt

Bankruptcy Courts within the Third Circuit regularly exercise their contempt power under 11 U.S.C. § 105(a) to remedy violations of discharge injunctions. "A court may impose civil contempt sanctions where there is clear and convincing evidence that (1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order." *In re Meyers*, 344 B.R. 61, 65 (Bankr. E.D. Pa. 2006); see also *Robin v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

This Court is also sensitive to the Supreme Court's 2019 ruling in *Taggart v. Lorenzen*, which restricted the contempt power of the bankruptcy courts. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019). In *Taggart*, the creditor violated the discharge order by obtaining a state court judgment on a pre-petition debt after the debtor received a discharge, and then sought post-petition fees. The bankruptcy court initially held a strict liability standard, where a creditor is liable for contempt if it was aware of the discharge order and intended the violating action(s). The Bankruptcy Appellate Panel vacated the decision, and the Ninth Circuit affirmed, determining that the court must consider whether the creditor had a good faith belief that the order did not apply, even if the belief is unreasonable. Attempting to strike a balance of creditor and debtor rights, while looking at standards governing contempt outside of bankruptcy law, the Supreme Court determined that, "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795 at 1804.

Applying the Supreme Court's articulated objective standard as outlined in *Taggart*, this Court determines it is unassailable that Defendant's attempts to enforce the pre-petition municipal

9

fines were unlawful, both subjectively and objectively. Defendant was aware that the discharge injunction existed because it had received notice of the order by the Court, as well as by Plaintiff's prior and current counsel. The language of the order is direct and clear— "This order means that no one may make any attempt to collect a discharged debt from the debtors personally. . . Creditors who violate this order can be required to pay debtors damages and attorney's fees." *Plaintiff's Motion for Summary Judgment*, Exhibit B- Order of Discharge, ECF No. 23. In addition, § 105 authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Upon a finding of civil contempt, a bankruptcy court has the power to issue sanctions such as costs, compensatory damages, and attorneys' fees." *In re Meyers*, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006). Defendant willfully and knowingly violated the discharge order by continuing to enforce the fines arising from the pre-petition motor vehicle violations. Conclusively, Defendant should be held in contempt, but first, it has raised several affirmative defenses in its argument that must be addressed.

### V. Sovereign Immunity

Defendant's first affirmative defense is that Plaintiff's damage claims must be dismissed as they are barred by the doctrine of sovereign immunity. Notwithstanding the Bankruptcy Court's power to award damages under 11 U.S.C. § 524 and its statutory contempt powers under 11 U.S.C. § 105(a), a court may not award damages against a governmental unit unless sovereign immunity has been expressly and unequivocally waived. *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992).

However, sovereign immunity, or the belief that a state is immune from being sued by its own citizen, has been waived in this case as a result of the enactment of the Bankruptcy Code. The United States Constitution authorizes Congress to enact "uniform Laws on the subject of

Bankruptcies throughout the United States." U.S. CONST. art I, § 8, cl. 4. "In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 378, 126 S. Ct. 990, 1005, 163 L. Ed. 2d 945 (2006). Specifically, the language found in § 106 of the Bankruptcy Code states as follows:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> > (1) Section 105 [power of the court], 106 [waiver of sovereign immunity] [and] 524 [effect of discharge], of this title.

11 U.S.C. § 106. A "governmental unit means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government". 11 U.S.C. 101(27). While waivers of immunity must be strictly construed in favor of the sovereign, and ambiguities must be resolved in favor of immunity, *In re Quiles Aviles*, 532 B.R. 428, 438 (Bankr. D.P.R. 2015) (citing *Orff v. United States,* 545 U.S. 596, 601–602, 125 S.Ct. 2606, 162 L.Ed.2d 544 (2005); *United States v. Williams,* 514 U.S. 527, 530, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995)), there is no such ambiguity in this case. Defendant, a governmental unit and a municipality, cannot assert sovereign immunity, knowingly violating the discharge injunction, and is subject to findings for contempt. Section 106(a) of the Code expressly waives such immunity where the bankruptcy court exercises its authority under §§ 105 and 524. 11 U.S.C. § 106(a)(1).

## VI. The New Jersey Tort Claims Act

The remaining pertinent affirmative defense raised by Defendant is that Plaintiff is barred from bringing any damage claim against Defendant due to the New Jersey Tort Claims Act. Procedurally, should a party wish to assert a claim against a municipality for any injuries sustained, they must first properly file a claim and then provide notice to that public entity within 90 days of the incident in question. *N.J.S.A.* 59:8-4, 59:8-7, 59:8-8. Should a prospective claimant not satisfy these requirements, the claim will be barred. *N.J.S.A.* 59:8-3. Defendant contends that Plaintiff's failure to file and serve a claim on Neptune Township, or any of its authorities under Title 59, serves as a bar to prosecuting a damage claim. However, compliance with the New Jersey Tort Claims Act in this matter is unecessary because the municipality's sovereign immunity does not serve as a bar from suit.

"The New Jersey Tort Claims Act, *N.J.S.A.* 59:1-1 to :12-3, is the statutory mechanism through which our Legislature effected a waiver of sovereign immunity." *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 213 N.J. 130, 133, 61 A.3d 906, 908 (2013). "The provisions of the . . . Tort Claims Act can be invoked to limit enforcement of a federal claim only to the extent that a waiver of the State's sovereign immunity is necessary." *In re Bryco Funding, Inc.*, No. 08-30173 TEC, 2009 WL 3271309, at *2 (Bankr. N.D. Cal. Oct. 9, 2009). The partial waiver of sovereign immunity imparted by the Tort Claims Act is not unlimited, "but is bound by the Legislature's declaration of purpose, *see* N.J.S.A. 59:1-2, and enforced through the application of numerous express limitations embodied in the statute's provisions . . . . [T]he Tort Claims Act [is] the means through which the Legislature 're-establishe[d]' sovereign immunity." *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 213 N.J. at 133; *see also Velez v. City of Jersey City*, 180 N.J. 284, 289, 850 A.2d 1238, 1241 (2004). However, inasmuch as there has been a wholesale waiver of

sovereign immunity pursuant to 11 U.S.C. § 106(a)(2) for the claims at bay, as discussed above, the New Jersey Torts Claim Act serves no purpose and offers no coverage for Defendant.

### VII. Civil Rights Violations

This Court *sua sponte* abstains from ruling on any civil rights issues asserted by Plaintiff. The bankruptcy court may permissively abstain under 28 U.S.C. § 1334(d) and 11 U.S.C. § 305(a) should it be in the best interest of the parties. *In re MicroBilt Corp.,* 484 B.R. 56 (Bankr. D.N.J. 2012); *see also In re A & D Care, Inc.,* 90 B.R. 138, 141 (Bankr. W.D. Pa. 1988). A court will look to multiple factors in determining whether permissive abstention is appropriate, including—

> (1) the court's duty to decide what is before it; (2) the effect on the efficient administration of the estate if the court abstains; (3) the possibility of inconsistent results stemming from the abstention; (4) the waste of judicial resources; (5) the presence of difficult or unsettled areas of state law more properly addressed in a state forum; (6) considerations of comity; (7) prejudice to any non-debtor party from proceeding in federal court; (8) the extent to which state law issues predominate over bankruptcy issues; (9) the presence of a related proceeding commenced in state court; (10) jurisdictional basis other than 28 U.S.C. § 1334; (11) how related the case is to the main bankruptcy case; (12) the substance of a "core" proceeding; (13) the feasibility of severing state law claims from the bankruptcy case; (14) the burdens to the court's docket; (15) the existence of a right to a jury trial; and (16) the presence of non-debtor parties in the case.

*MicroBilt Corp.,* 484 B.R. at 66 (citing *In re Strano*, 248 B.R. 493, 504 (Bankr. D.N.J. 2000)). This Court has considered these factors, especially the facts that the chapter 13 case is closed, Plaintiff received his discharge, and any remaining civil rights violations would not affect the bankruptcy estate or be considered "core" to the bankruptcy. Therefore, the Court abstains from adjudicating any civil rights claims in this matter and concludes that abstention is in the best interest of the parties and the Court.

### VIII. Damages

Plaintiff seeks damages for lost wages, mental and emotional harm, and costs associated with attorney's fees and court filings. *See Plaintiff's Motion for Summary Judgment* 8, ECF No. 23. The Bankruptcy Court has the power to award damages pursuant to 11 U.S.C. § 524 and its

statutory contempt powers under 11 U.S.C. § 105(a) if sovereign immunity has been expressly and unequivocally waived. *See In re Quiles Aviles*, 532 B.R. at 437. As noted, this waiver has been established in the present case. Section 106(a) states the following:

> (3) The court may issue against a governmental unit an order, process, or judgment under such sections . . . including an order or judgment awarding a **money recovery, but not including an award of punitive damages**.
>
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit . . . .

11 U.S.C.§ 106(a) (emphasis added). While 11 U.S.C. § 106 may award compensatory money damages, it restricts the award for punitive damages; likewise, this Court follows the approach taken by several other courts, which have disallowed award for emotional distress damages against governmental units under 11 U.S.C. § 105(a) for any willful violation off § 524. *See, e.g.*, *In re Rivera Torres*, 432 F.3d 20, 31 (1st Cir. 2005); *In re Quiles* 532 B.R. at 439-440; *In re Duby*, 451 B.R. 664, 672 (B.A.P. 1st Cir. 2011), *aff'd,* No. 11-9006, 2012 WL 12552111 (1st Cir. Apr. 17, 2012).

As noted in *Rivera Torres*, *supra*:

> If more were needed, and it is not, our view is also that recognizing a waiver of sovereign immunity for emotional distress damages in this case would run afoul of § 106(a)(5), which forbids the creation of any substantive claim for relief "not otherwise existing under this title, the Federal Rules of Bankruptcy, or non-bankruptcy law." 11 U.S.C. § 105(a)(5).

*In re Rivera Torres*, 432 F.3d at 31.

### IX. Conclusion

For the foregoing reasons, the Court finds that Defendant violated the Discharge Order by continuing to fine and penalize Plaintiff for motor vehicle violations dating back to 1992 and 2001 after Plaintiff successfully discharged these debts to Neptune Municipal Township in 2016. Plaintiff, as an individual injured by Defendant's willful violation of the discharge order, is entitled

to recover actual damages related to lost employment opportunities, attorney's fees, and court costs. Plaintiff's Motion for summary Judgment shall be GRANTED (ECF No. 23), and Defendant's Cross Motion for summary Judgment shall be DENIED (ECF No. 28). This Court will enter an appropriate Order and schedule an evidentiary hearing to determine the extent of Plaintiff's damages.

*[Signature]*
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: June 17, 2020